## HARMON v. WALKER.

1. BANKRUPTCY—FRAUDULENT PREFERENCE—WHAT CONSTITUTES.
    To invalidate a payment of an antecedent debt as a preference under the bankruptcy act, the person receiving it must have had *reasonable cause to believe* the debtor to be insolvent,—*i. e.,* not possessed of sufficient property to pay his debts; circumstances giving rise to a *mere suspicion* of insolvency being insufficient.

2. SAME—PAYMENT TO ATTORNEY—QUESTION FOR JURY.
    Whether an attorney for a banking firm, in receiving payment for his services from the bank on the day before its suspension, and after it had failed, to his knowledge, to meet checks drawn upon it, had reasonable cause to believe the bank insolvent, *held,* a question for the jury.

3. EVIDENCE—VALUE OF PROPERTY—AUCTION SALE.
    The amount for which property sold at public auction is some evidence of its value.

Error to Wayne; Rohnert, J. Submitted June 5, 1902. (Docket No. 18.) Decided October 28, 1902.

*Assumpsit* by Henry A. Harmon, trustee in bankruptcy of Albert Ives, Butler Ives, and Albert Ives, Jr., copartners as A. Ives & Sons, against Bryant Walker and Hinton E. Spalding, copartners as Walker & Spalding, to recover an alleged preferential payment. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Reversed.

*Thomas A. E. Weadock,* for appellant.

*Elliott G. Stevenson,* for appellees.

MONTGOMERY, J. This action is brought by Henry A. Harmon, as trustee in bankruptcy of the banking firm of A. Ives & Sons, composed of Albert Ives, Butler Ives, and Albert Ives, Jr., to recover an alleged preferential

payment of $750, made to Mr. Spalding on the 8th of September, 1900. The firm closed its doors on the 10th of September, 1900, and the members were adjudicated bankrupts on their voluntary petition on the 11th of that month. On the 8th of September, in the forenoon, a check was given to the defendant firm, under the circumstances hereinafter stated, for the sum of $750, and it is to recover the amount represented by this check that the present action is brought. At the close of the testimony the learned circuit judge directed a verdict for the defendants.

The bankruptcy act of 1898 (30 U. S. Stat. p. 544) provides that "a person shall be deemed insolvent * * * whenever the aggregate of his property. * * * shall not, at a fair valuation, be sufficient in amount to pay his debts " (chapter 1, § 1, subd. 15); and further provides (chapter 6; § 60b) that if a preference is given within four months of the filing of the petition in bankruptcy, and the person receiving it "shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value." A further provision (section 60a) is that a person is deemed to have given a preference if, being insolvent, he has made a transfer of any of his property, the effect of which will enable one of his creditors to obtain a greater percentage of his debt than other creditors of the same class.

The learned circuit judge laid down the correct rule of law in deciding the case, the only question being whether a correct application of the law was made to the case in hand. The court stated the law to be that insolvency exists only when there are insufficient assets, at a fair valuation,—at a fair market value,—to meet the liabilities which then exist, and that a payment can only be considered a preferential payment when the person to whom it is made has reasonable cause to believe that this condition of insolvency existed at the time the payment was so made; that information as to facts which create a suspicion is not enough to charge the person receiving the payment under

this statute. We think this view of the law of the case is sustained by *Duncan* v. *Landis*, 45 C. C. A. 666, 106 Fed. 839; Coll. Bankr. (3d Ed.) 345; *Grant* v. *Bank*, 97 U. S. 80; *Stucky* v. *Bank*, 108 U. S. 74 (2 Sup. Ct. 219); *In re Eggert*, 98 Fed. 843; *Id.*, 43 C. C. A. 1, 102 Fed. 735.

But we are unable to agree with the conclusion of the circuit judge that there was no testimony from which the jury might justly have drawn the inference that Mr. Spalding, at the time he received this payment, had reasonable cause to believe the Iveses insolvent. In brief, the testimony was this: *First.* The Iveses were in fact insolvent. *Second.* Mr. Spalding had been the attorney of the Iveses, concerned in looking after their claim against one Michell, which was for a large amount; and, while he had collected something over·$31,000 of this sum, there was still a large amount owing to the Iveses. In addition to this, it appeared that in May, 1900, Mr. Spalding acted as attorney in the examination of an abstract and drafting a mortgage given to the State Bank for $25,000 upon property of Albert Ives, Jr., who testified that, while the property mortgaged was his, his brother, Butler Ives, did all the business, and that he (Albert Ives, Jr.) simply signed the papers. This mortgage was in fact given in the interest of the banking firm, and it is not an unfair inference to be drawn by a jury that Mr. Spalding, who was the attorney of the firm, knew this fact. The testimony as to the giving of the check was given by Butler Ives, who testified that on the 8th of September, which was Saturday, checks had been drawn upon the bank in various sums, which he had allowed to go back without payment; that in this dilemma he sent for Mr. Spalding; that Mr. Spalding was the attorney of the bank at that time, and was attending to their business; that he said to Spalding that he had let some checks go back, and did not know whether there would be any trouble about it,—did not think there would be, because Saturday afternoon was a half-holiday,—but, if any trouble was made, he wanted him to act. He does not recollect what Spalding said to that, but, after they

got through with that talk, Spalding wanted to know if he (Ives) could give him (Spalding) a check for what the bank owed him; that Ives inquired how much it was, and was told $750, and asked what it was for, and was told it was for services; that he thereupon drew the check in question, and gave it to Spalding, who on the same day received the money on it.

We think the inference to be drawn from this transaction as to whether Spalding had reason to believe the firm insolvent is an inference which should be drawn by the jury, and not by the court; and the cases cited by counsel for the defendants in no way militate against this view. The case of *Grant* v. *Bank, supra,* is a chancery case, determined on its facts. The court simply determined on the testimony in that case that the creditor had not reason to believe the bank insolvent. The case of *Stucky* v. *Bank, supra,* was a case of like character, which simply followed *Grant* v. *Bank.* In *Re Eggert,* which was first reported in 98 Fed. 843, it appears that there was a distinct finding, based on evidence, that the creditor had no knowledge of the fact that the bankrupt was insolvent, and had no reasonable cause to believe that it was intended by the transfer to give a preference. It was held—quite in line with the authorities—that, to constitute a voidable preference, the creditor must have reasonable cause to believe the debtor to be insolvent in fact, as a foundation for a reasonable cause to believe that an unlawful preference is intended. In the same case on review before the court of appeals (43 C. C. A. 1, 102 Fed. 735) this finding was adverted to, and it was said:

" The action of an ordinarily prudent man under given circumstances is necessarily a question of fact, rather than one of law. We are bound by the finding of the court below."

And the opinion concludes:

" Being unable to say, as a conclusion of law, that mere knowledge that the debtor was behind in his payments puts the creditor upon inquiry, and charges him with

notice of the facts which such inquiry might disclose, and being bound by the facts found by the court below, we are constrained to deny the petition."

This is far from saying that testimony of the character given in the present case is not sufficient for the consideration of the jury as bearing upon the question of whether the creditor has reasonable cause to believe in the insolvency of his debtor.

One other ruling should be adverted to. Plaintiff offered to show what certain property brought when offered at public auction. This was excluded, but, we think, was competent, under the holding in *Smith* v. *Mitchell*, 12 Mich. 180.

Judgment will be reversed, and a new trial ordered.

Hooker, C. J., Moore and Grant, JJ., concurred.