C. W. DWIGHT, Trustee, Appellant, v. F. L. HORN, Appellee.

No. 41465.

OCTOBER 19, 1932.

J. L. Thomas and Don K. Walter, for appellant.

E. H. Pollard and J. R. Leary, for appellee.

DE GRAFF, J.—L. B. Ringold Company was a retail clothing and furnishings establishment, doing business at Burlington,

32

Iowa. F. L. Horn, defendant-appellee, was engaged in the retail clothing and furnishings business at Fort Madison, Iowa. Ringold Company was contemplating a cessation of business on account of internal dissention among stockholders and was about to inaugurate a closing or quitting business sale. One Garland was manager of Ringold Company and had been acquainted with Horn for fifteen or eighteen years. Prior to the institution of the sale by Ringold Company, Horn and Garland were discussing the prospective sale, and out of this discussion and the subsequent activities relative thereto, this cause of action arose.

Horn was overstocked and wanted to reduce his stock of merchandise, if possible. It was suggested in the conversation between Garland and Horn that it would be to the mutual advantage of Horn and the Ringold Company if Horn would put some of his stock in the Ringold Company's store for sale during the closing-out sale, as it would give a greater selection for customers than if the Ringold Company's stock alone was handled. Horn was to receive from the proceeds of the sale of his goods a certain marked price, and anything in excess of that price was to belong to the Ringold Company. If Ringold Company did not account for the proceeds in cash, Horn would accept merchandise in lieu thereof. Whatever of Horn's goods remained unsold was to be returned to him. There was no written evidence of this arrangement. It rested entirely in parol.

Horn delivered to Ringold Company goods to the value of approximately $7,500. Approximately $3,500 worth of the identical merchandise delivered by Horn was returned to him, and approximately $3,500 worth of merchandise taken from the Ringold Company general stock was delivered to Horn in lieu of the cash proceeds to be accounted for to Horn. The return of the first merchandise was made in January of 1930, and of the second in February of 1930. Ringold Company filed a voluntary petition in bankruptcy on April 1, 1930, and was adjudicated a bankrupt.

The trustee in bankruptcy claims that the record discloses that a sale was made by Horn to the Ringold Company, and that Horn was nothing but a general creditor, and that Horn should account for the value of the merchandise received back by him from Ringold Company, for that the delivery of said merchandise to Horn within four months prior to the filing of a petition in bankruptcy constitutes a preference and is invalid.

From the record, it appears that both Horn and Garland testified with respect to the arrangement made prior to the closing-out sale of the Ringold Company. They were the only witnesses who testified with respect to those arrangements. Garland was called by plaintiff. Both on direct and cross-examination, he testified that when he had the conversation with Horn, the word "consignment" was used, and that in truth and in fact it was agreed that the Horn merchandise would be placed in the Ringold Company store on consignment. He testified that he knew the legal meaning of the term "consignment" and that it meant that the title to the property from the Horn store was to remain in Horn, and that the Ringold Company was to account for the proceeds of the sale of the Horn property either in cash or by merchandise of its equivalent value. No witness on behalf of the plaintiff disputes this. Horn was called in his own behalf. He testified that he knows the meaning of the word "consignment" among merchants and that it means that the goods belong to the owner until they are disposed of or settled for. He further testified that when he talked with Garland, it was stated that the goods which he should place in the Ringold Company store were to be goods placed there on consignment and not otherwise, and that he was to get the proceeds from the sale, and that all goods that were not sold were to be returned to him, and if he did not get the proceeds from the sale in cash, he was to get other goods and merchandise out of the Ringold Company stock of the equivalent value. No witness on behalf of the defendant disputes this.

In view of the record, it is necessary that this court determine the controversy under the assumption that Horn placed goods in Ringold Company's store on consignment, with the agreement that he was to take back all which was not sold and to get cash for the proceeds of that which was sold, but if cash was not available, was to get merchandise from the Ringold Company stock of the equivalent value. These facts are established by the evidence without controversy and it is not the province of this court to consider the facts other than as established by the record. With these facts before us, established beyond question, the matter is not difficult of solution.

In Mantz v. Capital City State Bank, 191 Iowa 572, which was an action to recover $800 alleged to have been received by the defendant bank within four months prior to the filing of a petition in bankruptcy, at a time when the bank had good cause to believe

its debtor to be bankrupt, this court said: "The burden was upon the plaintiff." See, also, Soper v. International Harvester Company of America, 194 Iowa 868. In the case of Jackson v. Jetter, 160 Iowa 571, it is said:

"The property which is subject to the control of the bankruptcy court is that owned by the debtor at the time he is adjudicated to be insolvent."

From this it is apparent that the burden is upon the trustee to establish by the greater weight of evidence that the goods which were placed in the Ringold Company store by Horn and returned were the property of the Ringold Company. Since the evidence offered by both the plaintiff and the defendant is conclusive on the proposition that the goods placed in the Ringold Company store by Horn were placed there on consignment, and not otherwise, it is clear that the property for which it is sought to require the defendant to account did not belong to the bankrupt at the time of the filing of the petition in bankruptcy. In so far, therefore, as the identical property which Horn put in the Ringold Company store was returned to him, he cannot be required to account.

The claim that the transfer and delivery to Horn of merchandise which was the property of the Ringold Company constituted an illegal preference, is equally untenable. The plaintiff did not meet the burden imposed upon him to establish by a preponderance of the evidence that the Ringold Company was insolvent when the goods were delivered to Horn nor did he prove that the defendant either had knowledge or reasonable cause to believe that the acceptance by the defendant of the goods shipped to him would effect a preference. We have held that apprehension or suspicion on the part of a creditor is not equivalent of good cause for it to believe that the debtor is insolvent at the time the payments are made. Waite v. Citizens State Bank, 178 Iowa 1331; Mantz v. Capital City State Bank, 191 Iowa 572; Burnham v. Fort Dodge Grocery Co., 144 Iowa 577; Stucky v. Masonic Savings Bank, 108 U. S. 74. The record as disclosed by the abstract contains nothing that would warrant this court in holding contrary to this fact question determined by the lower court. In fact, there does not seem to have been any effort on the part of the plaintiff to prove any such fact, save by inference. The talk that Garland had with Horn was to the effect that they were going to sell the assets of the company and pay to

the stockholders whatever was left. In fact, Garland offered to buy some of the preferred stock of the corporation, if they would let him run the business, and he so informed Horn. It was the belief of the manager of the Ringold Company that they were solvent as a going concern, and he himself would have taken the store and operated it except that the stockholders objected. Horn testified that the Ringold Company, so far as he knew, was solvent, and that they had a reputation of being solvent; that he had no knowledge or information to lead him to believe otherwise at any time prior to April 1, 1930; that in his transactions with this company prior to the date he made the consignment contract, the company had always settled with him promptly; that Garland told him about the dissension among the stockholders and that he himself had offered to purchase the assets and assume the liabilities; that Garland told him in January that he was using the proceeds from the sale to pay current bills.

We have examined the record with care and are unable to find any evidence tending to show that Horn knew or had reasonable cause to believe that the Ringold Company was insolvent at any time prior to April 1, 1930.

The appellee has filed a motion to dismiss the appeal. The motion is overruled.

The decree of the trial court was right, and it is—Affirmed.

STEVENS, C. J., and FAVILLE, ALBERT, and WAGNER, JJ., concur.