BOONE *v.* SPAGNUOLO.

1. BANKRUPTCY—PREFERENCES—BURDEN OF PROOF—EVIDENCE.
   Trustee in bankruptcy's burden of proof of showing creditor had reasonable cause to believe it obtained a preference by receiving payment from bankrupt *held,* not sustained in action against partnership of which bankrupt's uncle was a member where bankrupt had taken over a business which had been successful at that location for many years and misfortunes with which he was confronted at time he abandoned his business were not anticipated at time he gave chattel mortgage to uncle and paid off defendant and another creditor (11 USCA, § 96).

2. PARTNERSHIP—KNOWLEDGE OF MEMBER CHARGEABLE TO FIRM.
   Such knowledge as partner has of financial condition of partnership's debtor is chargeable to partnership.

3. BANKRUPTCY—PREFERENCES—KNOWLEDGE OF INSOLVENCY—EVIDENCE.
   Proof of mere apprehension or suspicion on part of creditors that debtor is insolvent at time of receiving payment is insufficient to sustain burden of proof upon trustee in bankruptcy in action to recover payments made creditor within four months before date of petition which resulted in preference to such creditor on ground that ordinary business man would believe himself receiving preference over bankrupt's other creditors (11 USCA, § 96).

4. COSTS—BRIEF.
   No costs are awarded appellee in case in which judgment is affirmed, where he files no brief in Supreme Court.

Appeal from Ingham; Collingwood (Charles B.), J. Submitted April 28, 1936. (Docket No. 104, Calendar No. 37,982.) Decided June 16, 1936.

Case by Burton H. Boone, trustee in bankruptcy of John Caruso, against William Spagnuolo, Joseph

Spagnuolo and Charles Spagnuolo, copartners doing business as Michigan Fruit Company, to recover alleged unlawful preference. Judgment for defendants. Plaintiff appeals. Affirmed.

*Brown, Gregg, Thompson & Glassen,* for plaintiff.

NORTH, C. J. Plaintiff, as trustee in bankruptcy of the bankrupt estate of John Caruso, brought this suit at law to recover from the defendant copartnership upwards of $1,000 which plaintiff alleges was paid to it by the bankrupt under such circumstances as to render it a preference and recoverable under the terms of the Federal bankruptcy act. 11 USCA, § 96. On trial before the circuit judge without a jury there was judgment for defendants. Plaintiff has appealed.

Section 60 of the Federal Bankruptcy Act, as amended (11 USCA, § 96), provides:

"(a) A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer to [of] any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. * * *

"(b) If a bankrupt shall have procured or suffered a judgment to be entered against him in favor of any person or have made a transfer of any of his property, and if, at the time of the transfer, or of the entry of the judgment, or of the recording or registering of the transfer if by law recording or registering thereof is required, and being within four months before the filing of the petition in bank-

ruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the judgment or transfer then operate as a preference, *and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."*

The circuit judge held plaintiff failed to prove that defendants at the time the money in question was paid had reasonable cause to believe they were being given a preference over other creditors of the bankrupt. For this reason recovery by plaintiff was denied. The question for review is whether this issue of fact was correctly determined.

The burden of proof was on plaintiff. 4 Remington on Bankruptcy (4th Ed.), § 1829, and note citing many cases. Seemingly the bankrupt and his uncle, William Spagnuolo, more than anyone else, possessed knowledge of the material facts. They were called as witnesses by plaintiff and examined at length. From the record it appears that the defendant partnership is composed of three brothers and engaged in the wholesale fruit business. One of these partners, William Spagnuolo, is an uncle of the bankrupt, John Caruso. In February, 1930, the latter, acting in accord with the advice of his Uncle William, bought a retail fruit, cigar and soft drink business from the Belsito Bros., in the city of Lansing. A business of this character had been successfully conducted in this particular store for upwards of 20 years. The agreed purchase price was the difference between the inventory value of the stock and fixtures and the outstanding liabilities of the Belsito Bros., which Caruso assumed and

agreed to pay. Among such liabilities was an unpaid account due the defendant partnership in excess of $500. The actual cash consideration paid to Belsito Bros. was $200 to $300. At this time Caruso borrowed $600 at a Lansing bank on a note indorsed by his uncle. In carrying on his business Caruso bought stock of the defendants. By May, 1930, he became indebted to them for more than $500. Thereafter defendants sold to him only on a c.o.d. basis. At this time he was told by one of the partners that they needed the money and could not do business with him unless he paid cash. On July 11, 1930, Caruso gave his Uncle William a chattel mortgage on the stock and fixtures in Caruso's store in the amount of $1,565. With this money, and evidently also using some other funds, Caruso paid (1) the bank note of approximately $600, (2) the balance in full of the Belsito Bros. account to defendants in the amount of $519.34, and (3) on his own account to defendants $520.66, leaving an unpaid balance of $69.46.

Previous to this and on June 15, 1930, Caruso took unto himself a wife. He used some money from his business to furnish a home. His domestic bliss was of short duration. His wife left him on or about August 15, 1930. Forthwith Caruso totally abandoned his place of business. This seems attributable to his grief and despondency arising from domestic troubles. In any event he left Lansing and returned to his former home. Shortly thereafter the uncle, William, took possession of the business and later sold it under his chattel mortgage for $1,500. On September 22, 1930, Caruso swore to a petition in bankruptcy. This was filed in the Federal court October 13, 1930, and on that date he was adjudicated a bankrupt. He scheduled liabilities

amounting to $2,766; but the total of claims filed and allowed was $1,030.75. The bankrupt's assets were meager and insufficient to pay creditors in the proportion that defendants were paid. It is for this reason that appellant asserts there was a preference and that he is entitled to recover the two items of $519.34 and $520.66 paid by the bankrupt to defendants on June 11, 1930.

We are of the opinion that the trial judge reached the right result on the factual issue. In his opinion he pointed out that Caruso had taken over a business having a good location and one that had been successfully conducted there for many years; that the misfortunes with which he was confronted at and about the time he abandoned his business were not anticipated by him or by his Uncle William at the time the chattel mortgage was given and the payments made to defendants; that the security taken by the uncle was a business transaction of an ordinary and usual type. Caruso testified he was not at that time contemplating selling or giving up the business, but attributed his subsequently doing so to his later and unexpected domestic misfortunes. The uncle knew that Caruso had other creditors at the time of the chattel mortgage transaction, but the record does not disclose that he had knowledge of the amount of Caruso's indebtedness. Even now it cannot be determined from the record before us how many, if any, creditors Caruso had or the amount of his liabilities at or about the time he made the two payments to defendants. The relationship of uncle and nephew between the mortgagor and mortgagee might in some cases be a ground of suspicion; but here the circuit judge who heard and saw the witnesses found that this circumstance, together with all the other testimony, was not "suffi-

cient to overcome the presumption that ordinary business deals are in good faith."

It is a fair inference from this record that William Spagnuolo was a man of very ordinary intellectual attainments, by no means a shrewd, overreaching person. His testimony is that at the time he took the chattel mortgage he was prompted by a desire to give his nephew financial assistance. The uncle was asked: "*Q.* Did you have any reason to suppose he wouldn't be able to go on and pay the other creditors?" He answered: "Not any more than when I put my money in the bank and it failed." It is true that whatever knowledge William Spagnuolo had is chargeable to the defendant partnership; but even so, this record fails to disclose that at the time Caruso made payment of the two items on July 11, 1930, the facts and circumstances of which William Spagnuolo (and therefore his firm) had knowledge, were such as should have led an ordinarily prudent business man to believe at that time he was receiving a preference over Caruso's other creditors. Unless the payment was made under such circumstances, plaintiff is not entitled to recover. *Buchanan State Bank* v. *DeGroot* (C. C. A.), 39 Fed. (2d) 397; 2 Collier on Bankruptcy (13th Ed.), p. 1299, citing a large number of cases.

"Recovery must be based upon facts to support the assertion of knowledge on the part of the creditor or reasonable cause to believe that insolvency existed at the particular time of the transaction. Indeed, there must be facts sufficient to apprise an ordinarily cautious person that inquiry would inform him of the insolvent condition of the bankrupt, and that the result of the transfer within four months before filing the petition would inevitably result in a preference under section 60 of the bank-

ruptcy act." *O'Grady* v. *Chautauqua Builders' Supply, Inc.*, 33 Fed. (2d) 957. (Citing numerous cases.)

"Apprehension or suspicion on the part of a creditor is not the equivalent of good cause for it (the creditor) to believe the debtor is insolvent at the time the payments are made." (Citing several cases, including *Stucky* v. *Masonic Savings Bank,* 108 U. S. 74 [2 Sup. Ct. 219]; *Soper* v. *International Harvester Co. of America,* 194 Iowa, 868 [190 N. W. 386].)

As hereinbefore indicated, we think the circuit judge correctly decided the case. The judgment entered in the circuit court is affirmed. Appellees have not filed a brief in this court and no costs will be awarded.

FEAD, WIEST, BUTZEL, BUSHNELL, EDWARD M. SHARPE, and TOY, JJ., concurred. POTTER, J., took no part in this decision.